IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MATTHEW COLLINS, | Case No. 3:13-cv-01268-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

James S. Coon, SWANSON, THOMAS, COON & NEWTON, The Thomas Mann Building, 820 S.W. Second Avenue, Suite 200, Portland, OR 97204. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, U.S. Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Lars J. Nelson, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Matthew Collins ("Mr. Collins") seeks judicial review of the final decision of the Acting

Commissioner of Social Security ("Commissioner") denying Mr. Collins' application for

disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II

and Title XVI of the Social Security Act. For the reasons stated below, the Commissioner's

decision is reversed and remanded for further consideration.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*,

554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th

Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this Court may not substitute its judgment

for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190,

1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may

not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495

F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.

2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554

F.3d at 1226.

## BACKGROUND

### A.  The Application

Mr. Collins was born on March 6, 1984 and is 30 years old. AR 227. Mr. Collins

graduated from high school where he received special assistance in the form of an Individualized

Education Program ("IEP") to address his Attention-Deficit/Hyperactivity Disorder ("ADHD").

AR 280, 358. Mr. Collins was certified as a nursing assistant in approximately 2003. *Id.*

Mr. Collins' past employment includes work at a fast-food restaurant, a call center, and various

retail stores, as well as working as a nursing assistant. AR 239-42, 280. Mr. Collins had modest

reported earnings beginning in 2001, which continued through 2010. AR 243. After 2010,

Mr. Collins' next reported earnings were in the fourth quarter of 2012 amounting to $647.00

related to his work at a convenience store. AR 245.

On January 13, 2011, Mr. Collins filed a Title XVI application for SSI and a Title II

application for DIB. AR 227, 229. Mr. Collins alleged a disability onset date of July 1, 2010. *Id.*

Mr. Collins alleged disability based on ADHD, depression, anxiety, and a positive diagnosis for

the Human Immunodeficiency Virus ("HIV"). AR 67. Mr. Collins stated in his Disability Report

completed as a part of his SSI and DIB applications that he stopped working and is unable to

pursue further education because of these conditions. AR 279. Further, Mr. Collins stated that his

illnesses made him unable to keep a consistent schedule, his mood caused him to be unreliable,

his short attention span caused him to be inattentive at work and unable to stay on the same task

for extended periods of time, and that these conditions caused tensions with supervisors. AR 293.

The Commissioner denied Mr. Collins' application initially and upon reconsideration;

thereafter, Mr. Collins requested a hearing before an Administrative Law Judge ("ALJ"). AR 9,

134, 139, 146, 150, 157. The initial hearing was scheduled for December 6, 2012, but was

postponed because Mr. Collins was hospitalized. AR 168, 196. A supplemental hearing was then

held on April 16, 2013, which Mr. Collins attended. AR 32-64, 198. At the hearing held on

April 16, 2013, the ALJ heard testimony from Mr. Collins, Gloria Willis, the clinical supervisor

for Prescott Terrance and Cascadia Behavioral Healthcare, and vocational expert ("VE") Paul K.

Morrison. AR 32-64. On May 23, 2013, the ALJ issued a decision finding that Mr. Collins was

not disabled within the meaning of the Social Security Act. AR 9-24.

Mr. Collins petitioned the Appeals Council for review of the ALJ's decision. AR 5. On

June 28, 2013, the Appeals Council denied the request for review, making the ALJ's decision the

final decision of the Commissioner. AR 1-3. Mr. Collins now seeks judicial review of that

decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

    1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
        significant mental or physical duties done or intended to be done for pay
        or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
        such work, she is not disabled within the meaning of the Act. 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
        substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ found that Mr. Collins met the insured status for DIB benefits through March 31, 2014. AR 11. The ALJ then applied the sequential process. At step one, the ALJ found that Mr. Collins had not engaged in substantial gainful activity after the alleged onset date of July 1, 2010. *Id.* At step two, the ALJ found that Mr. Collins had the following severe impairments: "asthma, drug and alcohol abuse, an affective disorder, attention deficit hyperactivity disorder, and a personality disorder." AR 12. The ALJ found that other symptoms and complaints in Mr. Collins' medical treatment records, including "anxiety disorder of posttraumatic stress disorder diagnosed by only a single source, the condition of malingering (NMDI), some gastroesophageal reflux symptoms, allergies, and HIV infection," were not severe impairments. *Id.* At step three, the ALJ ruled that Mr. Collins did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. *Id.*

The ALJ next assessed Mr. Collins' RFC. The ALJ found that Mr. Collins retained "the capacity to perform a full range of work at all exertional levels compromised by nonexertional limitations." AR 13. Those nonexertional limitations were defined as: "limited or compromised

by work with no contact with the public, occasional interaction with coworkers and supervisors, as well as work comprised of up to three step repetitive tasks in predictable environment, and with no exposure to smoke, dust, fumes, and environmental irritants." *Id.* In formulating the RFC, the ALJ found that Mr. Collins' "statements concerning the intensity, persistence and limiting effects of [the] symptoms are not entirely credible." AR 14. The ALJ also did not credit the other-medical source testimony from Gloria Willis, Damon Williams, and Ronda Carmer. AR 16-22. The ALJ concluded that the severity of symptoms alleged by Mr. Collins was not supported by objective findings and was not consistent with the activities he had the capacity to complete. AR 22.

At step four, the ALJ determined that Mr. Collins' RFC rendered him unable to perform any past relevant work. *Id.* At step five, based on the testimony of a VE, the ALJ concluded that Mr. Collins could perform jobs that exist in significant numbers in the national economy, including work as a companion, food assembler, hand packer, and material handler. AR 23. The VE further testified that even if Mr. Collins had a RFC that further restricted him to unskilled work, he could perform the work of a hand packer. AR 23-24. Thus, the ALJ ruled that Mr. Collins was not disabled as defined by the Social Security Act. AR 24.

## DISCUSSION

Mr. Collins argues that the ALJ erred by improperly considering the testimony of: (1) Gloria Willis; (2) Ronda Carmer; and (3) Damon Williams. Mr. Collins requests that the Court credit the testimony in dispute and remand this case for an immediate award of benefits.

## A.  Other-Medical Source Opinions

### 1.  Legal Standards

Under the social security regulations, there are "[a]cceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1513(a), (d). Social security regulations define "acceptable medical

sources" as licensed physicians, licensed or certified psychologists, licensed optometrists,

licensed podiatrists, and qualified speech pathologists. *Id.*; *see also* Social Security Ruling, SSR

06-03p; Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are

Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by

Other Governmental and Nongovernmental Agencies, 71 FR 45593-03, 45596 (Aug. 9, 2006)

(hereinafter "SSR 06-03p"). Other health care providers who are not "acceptable medical

sources," such as "nurse practitioners, physician assistants, licensed clinical social works,

naturopaths, chiropractors, audiologist, and therapists," are still considered "medical sources"

under the regulations, and the ALJ can use these other-medical source opinions in determining

the "severity of the individual's impairment(s) and how it affects the individual's ability to

function."[1] SSR 06-03p.

"In order to reject the testimony of a medically acceptable treating source, the ALJ must

provide specific, legitimate reasons based on substantial evidence in the record." *Molina v.

Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). To reject the competent testimony of other non-

acceptable medical sources, however, the ALJ must only give "reasons germane to each witness

for doing so." *Id.* (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

In rejecting such testimony, the ALJ need not cite the specific record as long as "arguably

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

link his determination to those reasons," and substantial evidence supports the ALJ's decision.

*Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ also may "'draw inferences logically

---

[1] "Acceptable medical sources" are the only sources that can establish the existence of a
medically determinable impairment, and the only sources that can be considered "treating"
sources whose opinions are entitled to controlling weight. *Id.*

flowing from the evidence.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

In considering how much weight to give other-medical source opinion evidence, the ALJ should consider: (1) "[h]ow long the source has known and how frequently the source has seen the individual;" (2) "[h]ow consistent the opinion is with other evidence;" (3) "[t]he degree to which the source presents relevant evidence to support an opinion;" (4) "[h]ow well the source explains the opinion;" (5) "[w]hether the source has a specialty or area of expertise related to the individual's impairment(s);" and (6) "[a]ny other factors that tend to support or refute the opinion." SSR 06-03p at 45594-95.

### 2.  Gloria Willis

Mr. Collins argues that the ALJ erroneously rejected the opinion of Gloria Willis who is Mr. Collins' current mental health counselor, case manager, and the housing manager at the residential mental health facility managed by Cascadia Behavioral Healthcare where Mr. Collins lives. Because Ms. Willis is not a licensed physician or psychologist, she is not an acceptable medical source and is instead an other-medical source. *See* 20 C.F.R. § 414.1513(d). The ALJ was therefore required to provide germane reasons for rejecting Ms. Willis' opinion. *Turner*, 613 F.3d at 1224.

The Commissioner argues that the report from Jay Bennett cited by the ALJ supports his rejection of Ms. Willis' testimony. The Commissioner also argues that the Court should "reasonably infer" that the ALJ rejected Ms. Willis' opinion because her comments on Mr. Collins' ability to work, in particular, his ability to keep pace and learn a job in one month, were inconsistent with other evidence. AR 333, 334. Finally, the Commissioner argues that

Mr. Collins' socialization and ability to find support undermines Ms. Willis' opinion.[2] Each of the Commissioner's arguments are addressed in turn.

### a. Jay Bennett's Adult Function Report

Ms. Willis provided live testimony at Mr. Collins' hearing and in a written interview submitted after the hearing. AR 47-57, 331-337. Ms. Willis first began working with Mr. Collins in December of 2011 and, beginning in November of 2012, took on the role as Mr. Collins' therapist. AR 331. Although Ms. Willis was scheduled to have one-hour one-on-one therapy sessions with Mr. Collins each week, he had difficulty sitting through an entire hour-long session and often left early. AR 48. On average, Ms. Willis generally had two shorter one-on-one therapy sessions with Mr. Collins each week as well as one group therapy session that lasted about an hour. *Id.* Ms. Willis noted the following things about Mr. Collins: he had difficulty maintaining attention and concentration and cannot stay on task for more than an hour, *id.*, AR 333-34; he had been to the hospital twice during Ms. Willis' experience working with Mr. Collins due to suicidal ideations, AR 51; he had difficulty cleaning his apartment without prompts and inspections from the skill trainers, AR 332; he had "lots of laundry," dirty dishes in a bathroom sink, rotting food, and difficulty keeping a cat litter box clean in his apartment, *id.*; he checked in with staff on a daily basis to cope with his emotional problems, *id.*; he had difficulty sleeping and maintained an irregular sleeping schedule, AR 333; he had demonstrated the same inability to concentrate, interpersonal relationship issues, and problems with activities

---

[2] The Commissioner also argues that the ALJ did not act improperly at the hearing and during Ms. Willis' testimony and that the ALJ was not otherwise biased. Mr. Collins states in his reply brief that this argument was not raised in his opening brief and contends that this issue is not a basis for reversing the ALJ's decision. As a result, the Court does not address the Commissioner's arguments on this point.

of daily living like personal hygiene and housekeeping when he was not using marijuana,

AR 335; and he had a delusional perception of his life and others and often exaggerated, AR 335.

In addition, at the hearing when Mr. Collins' counsel began cross-examining Ms. Willis,

counsel began to ask Ms. Willis whether she "observed that [Mr. Collins] [had] difficulties

managing his life." AR 54. Rather than allow Ms. Willis to answer the question, the ALJ

provided: "I'll stipulate that [Mr. Collins] has a great deal of difficulty managing his life." *Id.*

In the ALJ's decision, he did not explicitly reject Ms. Willis' testimony and, instead,

stated that her reporting "differed significantly from that of Jay Bennett." AR 17. Jay Bennett

completed an Adult Function Report for Mr. Collins on July 1, 2011. AR 308-312. The Adult

Function Report listed several pages of questions and after each question Mr. Collins' response. AR 309-312. After the question section, Mr. Bennett wrote

the following in the "Remarks" section of the report:

> Matthew has tremendous difficulty maintaining a consistent and
> level temperament. He frequently experiences periods of
> enthusiastic optimism contrasted by periods of despair and
> depression. His fluctuating mood is correlated with fluctuations in
> energy level. Matthew also has a poor sense of personal boundaries
> among peers, coworkers, and authority figures. What Matthew
> perceives as friendly conversation is widely regarded as deception
> and an affront to personal space. These ongoing inconsistencies in
> temperament, along with Matthew's delusions regarding both
> present and past circumstances, make Matthew incapable of
> developing trusted long term or short term relationships with
> people.

AR 312. This portion of the Adult Function Report indicates that many of the answers in the

previous question section lacked reliability and were not necessarily an accurate reflection of

Mr. Collins' mental condition. Further, the answers in the question section were not noted as

being Mr. Bennett's opinion of Mr. Collins.

The ALJ also relied on Mr. Bennett's report to conclude that Mr. Collins' mental health was "pretty stable." AR 20. In full, the ALJ reasoned that: "[Mr. Collins'] mental health was described as pretty stable and, as described in the third party information submitted by Jay Bennett, he did keep his apartment clean at this facility (13F-48)." *Id.* The ALJ's comment relied on the "House and Yard Work" question section of the Adult Function Report. In that section, Mr. Bennett recorded, in relevant part, the following questions and responses:

> Q:      What household chores, both indoor and outdoor are you able to do?
>
> A:      Matthew does laundry, cleans the dishes, sweeps and mops regularly. He says, "I like to keep the place clean. I like to keep it sanitary."
>
> …
>
> Q:      Do you need help/encouragement to do these things?
>
> A:      Matthew is currently housed through Outside In, and receives goal setting sessions along with incentives for meeting those goals. Among these services are "life skills," which include a room check, nutrition counseling, and physical health checkup. Matthew is cooperative in these efforts.

AR 310.

The exhibit page cited by the ALJ, 13F-48, does not reference Mr. Collins' ability to keep his apartment clean. *See* AR 931. The previous page in that exhibit, however, is a case manager note from the Outside In Clinic on November 3, 2010. In that note, the case manager explained that "Matthew reported keeping his studio clean after the last effort to organize." AR 930. That note documents Mr. Collins' subjective reporting, which the ALJ discredited. Further, on May 19, 2011, a Mental Status Report completed by a psychiatric-mental health nurse practitioner from Outside In Clinic summarized Mr. Collins' daily living activities as follows: "Ability to perform activities of daily living appears impaired as evidenced by poor hygiene and

subjective reports." AR 887. These records do not indicate that Mr. Collins kept his apartment clean at the Outside In living facility.

Although the ALJ is given some flexibility in analyzing and weighing lay witness testimony, the Court does not find a contradiction between Ms. Willis' testimony and Mr. Bennett's Adult Function Report. Most importantly, the "Remarks" portion of Mr. Bennett's report explains, consistent with Ms. Willis' opinion, that Mr. Collins experiences "delusions regarding both present and past circumstances." AR 312, 335. The ALJ failed to clarify with Mr. Bennett that the question portion of the Adult Function Report was in fact based on Mr. Bennett's objective observations rather than Mr. Collins' self reports. Therefore, in the question portion of Mr. Bennett's report, Mr. Collins' answers stating that he keeps his apartment clean are not a reflection of Mr. Bennett's opinion. The ALJ's second reference to Mr. Bennett similarly fails to provide a germane reason to reject the opinion of Ms. Willis. The record from Outside In Clinic cited by the ALJ is a self-report from Mr. Collins to a case manager, not verification from a case manager that Mr. Collins was maintaining his apartment. In sum, the Court finds that the ALJ did not provide reasons germane to reject the testimony of Ms. Willis based on the evidence from Mr. Bennett.

### b.  Mr. Collins' Ability to Work

The Commissioner argues that the Court can reasonably infer that Ms. Willis' testimony is erroneous because the ALJ rejected the conclusion from "[a] number of sources" that Mr. Collins has no ability to work. AR 19; *see Lewis*, 236 F.3d at 512 (permitting the court to cross-apply the ALJ's analysis regarding one witness to another). Mr. Collins argues that the Court cannot affirm the ALJ on a reason to which he did not rely and that Mr. Collins' part-time work is not a sufficient reason to reject Ms. Willis' testimony.

With regard to the Commissioner's first argument, the Court agrees that other contradictory evidence discussed by the ALJ may be a valid reason to reject a particular lay witness's testimony. In *Lewis v. Apfel*, the Ninth Circuit analyzed whether the ALJ correctly rejected the lay witness testimony from a claimant's various family members. 236 F.3d at 511-12. The Ninth Circuit reasoned: "While the ALJ, in dismissing the family members' testimony, did not specify any inconsistent 'prior record statements,' he did note some arguably contradictory testimony at other points in his decision." *Id.* at 512. The court then noted the contradictions between the relevant lay witness testimony and the testimony of the claimant. *Id.* The court held that this was a sufficient basis to uphold the ALJ's decision. *Id.*

Mr. Collins objects to the application of *Lewis v. Apfel*. Mr. Collins contends that *Stout v. Commissioner* stands for the proposition that where the ALJ's reason for rejecting evidence is insufficient or nonexistent, a court cannot substitute reasons. 454 F.3d 1050, 1054 (9th Cir. 2006). Yet in *Stout* the court rejected a district court decision that upheld an ALJ's determination for reasons that were not mentioned or analyzed by the ALJ—*Stout* did not address the issue of whether an ALJ has to provide individualized reasons in rejecting certain aspects of a lay witness's testimony. *See id.* In *Molina v. Astrue*, the Ninth Circuit clarified that an ALJ's well-supported reasons for rejecting the testimony of a claimant can apply equally well to lay witness testimony. 674 F.3d at 1117. Thus, because the ALJ explicitly analyzed the issue of Mr. Collins' work history, and noted that "[a] number of sources" discussed the issue, the Court is not engaging in a *post hoc* rationalization but, instead, addressing an issue explicitly relied upon and analyzed by the ALJ.

With regard to the merits of the Commissioner's argument, Ms. Willis reported that Mr. Collins had difficulty working with peers, had difficulty with interpersonal relationships, and

had issues with boundaries and disclosing personal information. AR 332, 335. Ms. Willis also

discussed Mr. Collins' difficulty with focus, attention and memory, and that Mr. Collins would

have difficulty with work that required him to retain information for longer than a month.

AR 334.

The ALJ, in considering Mr. Collins' ability to work, found that Mr. Collins

"successfully worked part-time through much of this period." AR 19. The ALJ also noted that

when Mr. Collins took his ADHD medication, his ability to work improved. *Id.* The ALJ cited to

a progress note from October 22, 2012 completed by a social worker with Multnomah County

who documented that Mr. Collins "[r]eports he is doing very well" and "[s]tates he is now

working [part time] at a [convenience store] and he enjoys work." AR 1655. Earlier that same

day, however, Mr. Collins reported that although he was working as a stocker at a convenience

store, he was "having a lot of trouble focusing while at work" and "struggle[d] with maintaining

a job." AR 1656. Because of this, Mr. Collins requested additional medication for his ADHD.

This request for ADHD medication does not establish that Mr. Collins was more capable of

completing work. Further, during 2012 when Mr. Collins worked at a convenience store and was

taking ADHD medicine, he earned a total of $647.00. AR 245. Ms. Willis noted that Mr. Collins'

past hospitalization "very nearly ended his job, and [Mr. Collins' employer] tend[ed] to be pretty

flexible at the job [Mr. Collins] was working at about five hours a week." AR 336.

This evidence does not demonstrate that Mr. Collins is able to work regularly on a part-

time basis or that his impairments are less severe than documented by Ms. Willis. Further, the

hospitalization cited by Ms. Willis did not relate to Mr. Collins' ADHD but, instead, related to

his suicidal ideations that likely were a symptom of his personality disorder. Mr. Collins' work

history during the relevant time period was therefore limited and sporadic. In sum, the Court

finds that Mr. Collins' limited, part-time work history is not a germane reason to reject Ms. Willis' testimony.

### c. Mr. Collins' Socialization and Ability to Find Support

The Commissioner also argues that the ALJ's finding that Mr. Collins "socializes regularly," and that the "undercurrent in multiple records gives the impression that, despite real or imagined problems, [Mr. Collins] appears to have some skill in obtaining both psychological support and actual physical support," is a germane reason for discrediting Ms. Willis' testimony. *See* AR 19. Mr. Collins responds that this evidence is consistent with Ms. Willis' opinion and that it is not a germane reason to reject her testimony.

The Court agrees with Mr. Collins. Mr. Collins did not have difficulty socializing, rather he had a "poor sense of personal boundaries among peers, coworkers, and authority figures" and what he "perceive[d] as friendly conversation [was] widely regarded as deception and an affront to personal space." AR 312 (Mr. Bennett's remarks); AR 332, 335 (Ms. Willis' remarks). Thus, the fact that Mr. Collins was documented as socializing does not contradict Ms. Willis' testimony.

The ALJ also wrote that there was an "undercurrent" indicating that Mr. Collins was using his skill to obtain support, yet the evidence cited by the ALJ directly before this comment contradicts his conclusion. The ALJ explained that Mr. Collins was living in an apartment provided by the Cascade Aids Project as of May 16, 2011. AR 19, 1720-21. The ALJ concluded that it was in Mr. Collins' control to ask unauthorized individuals at his apartment to leave, AR 1722, but that Mr. Collins chose not to do so. After Cascade Aids Project evicted Mr. Collins because he permitted unauthorized visitors in his apartment, he lived with various individuals before obtaining housing through Cascadia Behavioral Healthcare. This evidence supports Ms. Willis' conclusion that Mr. Collins has poor personal boundaries.

PAGE 16 – OPINION AND ORDER

The ALJ also cited to a psychosocial assessment and discharge planning summary from Providence Portland Medical Center on July 22, 2010. AR 661. This record indicates that in a moment of crisis, Mr. Collins had suicidal ideations, was living with his sister at the time but was experiencing some conflict with her, and was on the waitlist for other housing options. AR 661, 663. The fact that Mr. Collins was in crisis, acted out, and then sought medical attention is consistent with Ms. Willis' testimony that Mr. Collins exhibited a delusional perception of his life, AR 335, had difficulty with activities of daily living, *id.*, and often had to rely on staff members to cope with his emotional problems, AR 332.

As a result, the Court concludes that Ms. Willis' testimony based on her experience with Mr. Collins between December 2011 and November 2012 is not inconsistent with earlier records documenting Mr. Collins' instability with regard to housing, his emotional condition, and various interpersonal relationships. As a result, this is not a germane reason for the ALJ to reject Ms. Willis' opinion.

### d.  Conclusion

The ALJ failed to provide a germane reason to reject the other-medical testimony of Ms. Willis.

### 3.  Ronda Carmer

Mr. Collins argues that the ALJ erroneously rejected the opinion of Ronda Carmer who was Mr. Collins' treating mental health provider from May 2010 through November 2012. *See* AR 1747. At the time, Ms. Carmer had a Masters of Arts and was a Qualified Mental Health Professional and a Certified Alcohol and Drug Abuse Counselor. AR 1749. Because Ms. Carmer was not a licensed physician or psychologist, she was an other-medical source pursuant to 20 C.F.R. § 414.1513(d). The ALJ was therefore required to provide germane reasons for rejecting Ms. Carmer's opinion. *See Turner*, 613 F.3d at 1224.

In his decision, the ALJ referenced the November 29, 2012 statement from Ms. Carmer. Ms. Carmer's statement noted that "Mr. Collins' records show that he has been diagnosed with a number of mental health impairments." AR 1747. Ms. Carmer went on to list the diagnosed impairments as "Major Depressive Disorder," "Suicidal Ideation," "Posttraumatic Stress Disorder (From notes of Heather Elizabeth Prouty, MD on 7/5/12)," "ADHD," and "Panic Attack with Suicidal Ideation (From notes of Joseph Conrad Howton, MD on 6/15/12)." *Id.* Ms. Carmer also wrote that she "would add to these diagnoses" "Borderline Personality Disorder." *Id.*

The ALJ rejected Ms. Carmer's opinion first because the relevant medical evidence did not show that Mr. Collins had borderline intellectual functioning. AR 21. The ALJ also found that "[s]uicidal ideation, or panic attack with suicidal ideation, is a symptom and not a diagnosis," and that "[p]osttraumatic stress disorder [had] also been rejected as a valid diagnosis." *Id.* The ALJ further stated that the "arguments presented by this source are suspect" because Mr. Collins had "a documented history of securing housing and support with the least amount of personal investment possible," that he has the capacity "for tracking appointments, [to] manag[e] his own affairs, and clean[]." AR 22. After noting several other ways in which Mr. Collins is more capable than indicated by Ms. Carmer, the ALJ concluded that Mr. Collins "demonstrates the ability to manipulate his environment to maintain a dependent status and continue to have needs satisfied with minimal effort." *Id.* The ALJ concluded that Ms. Carmer's interpretation of the record evidence was "inconsistent with the objective history," and that "[t]his primary factor, combined with her credentials, warrants that little weight be given to this source." *Id.*

Mr. Collins makes three challenges to the ALJ's rejection of the testimony of Ms. Carmer, specifically: (a) the ALJ's finding that Ms. Carmer erroneously relied on a psychological evaluation to conclude that Mr. Collins has borderline intellectual functioning; (b) the ALJ's rejection of Ms. Carmer's testimony because of her reference to Mr. Collins' suicidal ideation as a diagnosis; and (c) the Mr. Collins' symptoms are attributable to his personality disorder support a finding of disability. The Court finds that the first reason provided by the ALJ is a germane reason to reject Ms. Carmer's testimony and therefore does not analyze Mr. Collins' remaining two challenges.

The ALJ rejected Ms. Carmer's testimony because she concluded that Mr. Collins has borderline intellectual functioning. Both the ALJ and Ms. Carmer reference a psychological evaluation completed by Keli J. Dean, Psy.D., on February 14 and 16, 2005. Mr. Collins contends that because there were testing areas where Dr. Dean found Mr. Collins had borderline functioning, Ms. Carmer's reference is supported by the record. The Commissioner argues that the evaluation notes from Dr. Dean indicate that Mr. Collins' "'overall intellectual score . . . was in the *Low Average* range' and 'the majority of scores [are] in the *Average* range." Def.'s Br. at 12, Dkt. 19 (emphasis in original).

The parties dispute the meaning of two tests from Dr. Dean's report: the Wechsler Adult Intelligence Scale – Third Edition ("WAIS-III") and the Wechsler Memory Scale – Third Edition ("WMS-III"). *See* AR 361-363. The WAIS-III "is an individually administered test designed to assess the intelligence of individuals ranging in age from 16 years to 89 years." *Thomas v. Allen*, 614 F. Supp. 2d 1257, 1265 (N.D. Ala. 2009) *aff'd,* 607 F.3d 749 (11th Cir. 2010). The WAIS-III separates testing into two separate skill set areas: the verbal scale and the performance scale, both of which have multiple subtest areas. *Id.* at 1265-66. The WMS-III "is a measure of

Immediate Memory (capacity to repeat novel information immediately after it is presented),

Working Memory (capacity to take in, hold, and then manipulate or process information), and

Delayed Memory (capacity to repeat novel information after a time delay)." AR 363.

Regarding the WAIS-III, Mr. Collins had below average scores in two verbal scale areas

(arithmetic and information) and three performance scale areas (digit symbol-coding, block

design, and symbol search). AR 361. Mr. Collins' IQ index was "low average" for verbal,

performance, and full scale. *Id.* His index score for working memory was "low average" and his

processing speed was "borderline." *Id.* Dr. Dean found that Mr. Collins' "overall intellectual

score as measured by the WAIS-III was in the *Low Average* range." *Id.* (emphasis in original).

With regard Mr. Collins' processing speed index, for the one WAIS-III score where Mr. Collins

was in the "borderline" range, Dr. Dean wrote that Mr. Collins' "low score on this index is likely

a reflection of inattention and distraction." AR 362.

Regarding the WMS-III testing, Dr. Dean explained that Mr. Collins' "memory scores

ranged from the *Borderline* to the *Average* range, with the majority of scores in the *Average*

range." AR 363. Specifically, Mr. Collins scored in the average range in one primary index

(working memory), scored in the low average range in four primary indexes (auditory

immediate, visual immediate, immediate memory, and auditory delayed), and scored borderline

in three primary indexes (visual delayed, auditory recognition delayed, and general memory). *Id.*

Dr. Dean commented that "[m]emory scores while not expected to be exactly consistent with

intelligence scores [the WAIS-III], are generally within the same basic range if there are no

difficulties with learning, memory or attention." *Id.* Dr. Dean found that in Mr. Collins' case,

"his immediate memory scores are consistent with what would be expected," but that he "will

have more difficulty than his peers on tasks that require him to recall visual information after a

time delay." *Id.* In addition, Mr. Collins' "low score on the delayed index may have been

negatively impacted by his difficulties with attention and distraction." *Id.* Finally, regarding the

auditory recognition index, Dr. Dean noted that Mr. Collins scored in the borderline range, which

was unusual and indicated that "he does not benefit from cues when recalling information after a

time delay." *Id.*

The Court finds that the ALJ provided a germane reason to reject Ms. Carmer's opinion.

A germane reason to discredit the testimony of an other-medical source includes a finding that

the other-medical source's testimony is inconsistent with "medical evidence." *Bayliss v.*

*Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Regarding Mr. Collins' intellectual functioning,

the applicable test from Dr. Dean would be the WAIS-III (the intelligence scale). As noted

above, this test indicated that Mr. Collins' "overall intellectual score as measured by the WAIS-

III was in the *Low Average* range." AR 361. (emphasis in original). This is inconsistent with

Ms. Carmer's statement that Mr. Collins has "Borderline Intellectual Functioning," AR 1747.

Moreover, to the extent that Ms. Carmer may have relied on the WMS-III, this test also fails to

establish that Dr. Dean concluded that Mr. Collins had borderline intellectual functioning. As a

result, the ALJ provided a germane reason to reject the testimony of Ms. Carmer.

### 4. Damon Williams

Mr. Collins argues that the ALJ failed to provide a germane reason to reject the opinion

of Damon Williams, one of Mr. Collins' treating mental health providers. Mr. Williams is a

psychiatric-mental health nurse practitioner and is not an acceptable medical source pursuant to

SSR 06-03p. Because of this, the ALJ is required to provide a germane reason to reject

Mr. Williams' testimony. *See Turner*, 613 F.3d at 1224.

The ALJ referenced Mr. Williams' testimony as one that indicated that Mr. Collins does

not have the ability to work. AR 19. The ALJ wrote,

> "[a]s indicated in an October 3, 2011, treatment note by Damon M. Williams, PMHNP, [Mr. Collins] initially presents as functional, as he is quite articulate and able to 'pull it together,' but in discussion[s] with staff who have known him over many years, depression, ADHD, and sometimes near psychotic delusions, are significantly impairing such that he can neither hold down a job or school, despite his desire to do so and belief that he can. The nurse practitioner adds that [Mr. Collins] requires redirection and limit setting, but in a context of genuine concern and warmth."

*Id.* The ALJ rejected this testimony and wrote: "However, the claimant has successfully worked part-time through much of this period." *Id.* Mr. Williams' assessment from the October 3, 2011 treatment note stated:

> 27 yo male with ADHD, PTSD and onset insomnia with very poor coping and very loose boundaries. Seeks regular re-assurance from staff to address his strong transference, few internal emotional resources and many negative internal conditions/ low self-worth. He initially presents as functional as he is quite articulate and can "pull it together" but in discussing his history with staff who have known him over many years, his depression, ADHD and sometimes near psychotic delusions are significantly impairing such that he can neither hold down a job nor school, despite his desire to do so (and belief that he can). He requires re-direction and limit setting but in the context of genuine concern and warmth. D/C Ambien. F/U 2-3 weeks.

AR 1684.

Mr. Collins argues that the ALJ's rejection of Mr. Williams' testimony was erroneous because the reasons provided by the ALJ did not relate to Mr. Williams' testimony. Mr. Collins also argues that his limited part-time work is not a germane reason to reject Mr. Williams' testimony. Regarding Mr. Collins' first argument, the Court finds that because Mr. Williams specifically referenced Mr. Collins' ability to work, the ALJ's analysis of Mr. Collins' work history as a basis to discredit Mr. Williams' testimony was relevant.

Regardless of whether the ALJ's analysis was relevant, however, the ALJ failed to provide a germane reason to reject Mr. Williams' testimony. As noted above, the record

evidence cited by the ALJ does not demonstrate that Mr. Collins was able to work part-time after

Mr. Collins' alleged disability onset date. At most, Mr. Collins worked sporadically stocking

items at a convenience store, received only $647.00 in income in 2012, and was close to losing

this limited part-time work due to hospitalization. *See supra* Section A.2.b. Based on this

evidence, Mr. Williams' testimony regarding Mr. Collins' capability is not inconsistent with the

record evidence. The ALJ failed to provide a germane reason to reject the other-medical

testimony of Mr. Williams.

**B.  Remand for Further Consideration**

The decision whether to remand for further proceedings or for immediate payment of

benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th

Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further

proceedings. A remand for an award of benefits is appropriate when no useful purpose would be

served by further administrative proceedings or when the record has been fully developed and

the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d

1135, 1138 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)).

The court may not award benefits punitively and must conduct a "credit-as-true" analysis to

determine if a claimant is disabled under the Act. *Id.*

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award

of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for

rejecting such evidence; (2) there are no outstanding issues that must be resolved before a

determination of disability can be made; and (3) it is clear from the record that the ALJ would be

required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true"

doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in

determining whether to enter an award of benefits upon reversing the Commissioner's decision.

*Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341,

348 (9th Cir. 1991) (en banc)). The reviewing court should decline to credit testimony when

"outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

In this case, further administrative proceedings are warranted, and the Court declines to

credit the improperly rejected other-medical source testimony. *See Luna*, 623 F.3d at 1035. The

ALJ's consideration of the other-medical source testimony of Ms. Willis and Mr. Williams was

erroneous for the reasons stated above. The Commissioner argues that the Court should find that

the other record evidence supports a finding that the ALJ's error was harmless. In particular, the

Commissioner asks the Court to find that several non-examining medical opinions outweigh the

opinions of Ms. Willis and Mr. Williams despite their extensive history of working with

Mr. Collins. As noted above, SSR 06-03p provides detailed guidance on how an ALJ should

evaluate and weigh other-medical source testimony. SSR 06-03p notes that "it may be

appropriate to give more weight to the opinion of a medical source who is not an 'acceptable

medical source' if he or she has seen the individual more often than the treating source and has

provided better supporting evidence and a better explanation for his or her opinion." SSR 06-03p

at 45596. Because the ALJ did not evaluate Ms. Willis' and Mr. Williams' testimony as

compared to the non-examining medical sources cited by the Commissioner, the Court concludes

that the ALJ should weigh this evidence in the first instance.

Consequently, the ALJ's subsequent RFC assessment and hypothetical questions to the

VE at step four and determination at step five that jobs exist in the national economy are not

based upon the proper legal standards. This case is remanded for further proceedings. If

necessary, the ALJ must revise Mr. Collins' RFC determination. Finally, the ALJ must make

adequate step four and five determinations incorporating any revised findings.

PAGE 24 – OPINION AND ORDER

**CONCLUSION**

The Court reverses the Commissioner's final decision and remands this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order. The testimony and records to be considered at these proceedings consist of: (1) Ms. Gloria Willis; and (2) Mr. Damon Williams.

**IT IS SO ORDERED**.

DATED this 15th day of August, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge